UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA

       - against -                                   *11 Cr. 486 (DLI)*

AL KARAQI

        Defendant.
----------------------------------------------------------X

**MEMORANDUM OF LAW IN AID OF SENTENCING**

LAW OFFICES OF ERIC FRANZ
Attorneys for Defendant Al Karaqi
747 Third Avenue, 20th Floor
New York, NY 10017
(212) 355-2200

# TABLE OF CONTENTS

I. INTRODUCTION……………..………..……………....1

II. THE OFFENSE CONDUCT……………….…..…………………1

III. THE GUILTY PLEA……………….…..………………………3

IV. PLEA AGREEMENT AND PRESENTENCE REPORT………...3

V. LEGAL STANDARD…………….…………………………….8

VI. AL'S HISTORY AND CHARACTERISTICS……………...…10

VII. CONCLUSION..…………………………………………...…14

I. **INTRODUCTION:**

It is truly unfortunate that Mr. Al Karaqi ("Al"), a 39 year old husband and father, with no prior criminal history, will be sentenced by Your Honor, for his admitted lapse of judgment in engaging in his offense conduct, for which he made absolutely no money – indeed, it cost him $500 and a felony conviction. We respectfully submit that Al's lack of any prior criminal record, limited offense conduct, family values and work ethic, collectively warrant a non-custodial sentence.

II. **THE OFFENSE CONDUCT**

Al Karaqi, as well as his two brothers, Robert and Lee Karaqi, his sister, Magdalena Nikollaj ("Magdalena"), and her boyfriend, Gjavit Thaqi ("Thaqi"), were all arrested in this matter, and have since entered guilty pleas. As reported in the Presentencing Report ("PSR") Al and his brothers were introduced to Thaqi by their sister, Magdalena. *PSR* at ¶18. It was that introduction that led each of them to become involved in the instant offense, but in different capacities. *Id.* We note that by describing the extent to which Al participated in the offense he in no way seeks to retreat from his acceptance of responsibility for his conduct and guilty plea.

It bears emphasis that Al did not initially seek to become involved in any criminal behavior. Indeed, his initial conduct occurred several years ago, when one of Al's co-workers approached him and asked Al to do him a favor and introduce him to Thaqi, who was reputed to be a marijuana dealer, so that he could purchase marijuana from Thaqi. Al made the introduction and the co-worker proceeded to purchase a pound of marijuana from Thaqi for $1,000. Thaqi provided the marijuana to the co-worker in exchange for $500 and his promise to pay the balance – which he failed to do. Thaqi then held Al

1

responsible (since he made the introduction) and Al ultimately gave $500 to Thaqi. While Al did not expect to make any money from this "favor," it wound up costing him $500.

On one other occasion, years later, another individual who Al was acquainted with, approached Al and said he heard that Thaqi was in possession of marijuana from Colorado and wanted to obtain a sample. Al obtained a small sample from Thaqi and provided it to this person but no further transactions occurred. Al did not make any money from this, nor did he expect to.

Finally, Al agreed to take a trip to Michigan with his brothers to visit family and friends, and to also investigate the possibility of establishing a marijuana grow house in Michigan. However, no grow house was ever established.

Thus, his offense conduct consists of making an introduction which resulted in the sale of 1 pound of marijuana – which cost Al to <u>lose</u> $500; providing a sample of marijuana to an individual; and an investigatory trip to Michigan concerning a plan to open a marijuana grow house which never came to fruition.

In sum, Al was a peripheral participant, who is characterized as "one of the least involved members of the conspiracy, with no proprietary interest over the marijuana he trafficked in, and little responsibility." *PSR Addendum at 1-2*. Among the various downward adjustments which the government agrees Al is entitled to is the 4 point minimal role adjustment provided for in U.S.S.G. §3B1.2(a), a 2 point downward adjustment pursuant to U.S.S.G. §2D1.1(b)(15),[1] as well as a 2 point reduction for his satisfaction of the safety valve criteria pursuant to U.S.S.G. §2D1.1(b)(16).

---

[1] U.S.S.G. §2D1.1(b)(15) provides for a 2 level decrease in the sentencing guidelines calculation: "If the defendant receives the 4-level ("minimal participant") reduction in § 3B1.2(a) and the offense involved all

### III. GUILTY PLEA:

Al accepted responsibility for his conduct and entered a timely guilty plea, pursuant to a plea agreement, on March 21, 2013, before Magistrate Judge Joan M. Azrack to a lesser-included offense within Count Three (Conspiracy to distribute and possess with intent to distribute marijuana) of the 11-Count Superseding Indictment. According to the docket sheet, Your Honor accepted Al's guilty plea on May 15, 2013.

### IV. PLEA AGREEMENT AND PRESENTENCE REPORT:

**This Court Should Adopt the Guidelines Calculation Contained in the Plea Agreement and Reject the Calculation in the PSR Addendum**

On March 21, 2013, Al Karaqi pled guilty pursuant to a plea agreement which, we respectfully submit, represents an accurate calculation of his offense conduct. However, the guidelines calculation contained in the PSR Addendum is higher than that provided for in the plea agreement due to the Department of Probations' misunderstanding as to Al's culpability and disagreement regarding the application of various reductions provided for in the United States Sentencing Guidelines.[2]

---

of the following factors:" (A) The defendant was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense; (B) The defendant received no monetary compensation from the illegal purchase, sale, transport, or storage of controlled substances; and (C) The defendant had minimal knowledge of the scope and structure of the enterprise.

[2] We note that the PSR contained many factual inaccuracies regarding Al's offense conduct. As such, counsel submitted to Probation a number of objections to the *offense conduct* of the PSR. A copy of that letter was previously provided to the Court pursuant to the Court's individual rules, and is attached as Exhibit A. The government fully supported Defense Counsel's objections and the PSR. Although the PSR Addendum incorporated a majority of the parties' factual averments with regard to Al's conduct, Probation's calculation of Karaqi's offense level is erroneous.

For the Court's ease, the following is a chart that compares the calculations contained in the plea agreement and the Presentence Report Addendum:

|  | Plea Agreement | Presentence Report Addendum |
|---|---|---|
| **Base Offense Level (§2D1.1 (c)(10)):** | 20 | 20 |
| **Safety Valve Reduction (§5C1.2)** | n/a [3] | -2 |
| **Role in the Offense (§3B1.2)** | -4 Minimal Role (§3B1.2(a)): | -3 Minor Role (§3B1.2(b)) |
| **Motivated by Familial Relationship (§2Dl.l (b) (15))** | -2 | n/a |
| **Acceptance of Responsibility (§3E1.1(a))** | -2 | -2 |
| **Global Disposition (§5K2.0)** | -2 | -2 |
| **Adjusted Offense Level** | **10** | **11** |

The plea agreement and the PSR Addendum are consistent concerning the appropriate base offense level, the acceptance of responsibility reduction, and that Al should receive the 2 point global disposition reduction pursuant to U.S.S.G. §5K2.0. *PSR* at *¶*126; *PSR Addendum* at 3. However, we object to the Probation Department's calculation with regard to its application of U.S.S.G. § 3B1.2 (Role in the Offense), and its determination that Al does not qualify for the reduction provided for in U.S.S.G. §2Dl.l (b) (15) (Motivation by Familial Relationship).

First, Al should receive a 4 point *minimal role* reduction pursuant to U.S.S.G. §3B1.2(a) instead of the 3 point "minor role" reduction. The plea agreement correctly provided for this 4 point reduction because Al: 1) had *absolutely no proprietary interest* in any of the marijuana transferred as a result of the introduction he procured; 2) lacked knowledge and understanding of the scope and structure of the enterprise; and 3) the

---

[3] We note that at the time Al pleaded guilty, March 21, 2013, he had not yet engaged in the safety valve proffer session which ultimately took place on July 8, 2013. We submit, and the government and Probation agree, that Al has now satisfied all of the criteria of U.S.S.G. § 5C1.2 and therefore should receive a 2 point reduction.

4

government acknowledges that he is among the least culpable of those involved in the criminal conduct. *See* U.S.S.G. §3B1.2(a).

Probation has deemed a "minimal role" reduction inappropriate because it alleges that "Al Karaqi had repeated involvement in the offense and knowledge of the larger scope of the conspiracy (given his plans to start a marijuana grow house for Thaqi and close relationship with Thaqi, a leader of this significant conspiracy)." *PSR Addendum* at 2. However, Probation ignores the simple fact that although he engaged in two transactions, such transactions were failures, and had absolutely no impact on the success of Thaqi's conspiracy. *See United States v. Garcia*, 920 F.2d 153, 155 (2d Cir. 1990) (In determining whether a defendant qualifies for a minimal role adjustment, the court must evaluate, *inter alia*, "the importance of the defendant's actions to the success of the venture").

While Al did take steps to start a marijuana grow facility in Michigan, he received no profit or benefit from his conduct. *See United States v. Hued*, 338 F.Supp.2d 453 (S.D.N.Y. 2004)(Marrero J.) (the defendant received a minimal role reduction, in part, because she did not receive any profit or benefit from her conduct and her contribution to the underlying offense was not substantial).

Karaqi is also worthy of the "minimal role" reduction because his culpability is far less than those who have received "minor role" reductions. *See United States v. Lopez*, 937 F.2d 716, 727 (2d. Cir.1991) (defendant received a minor role reduction even though he "knew of the plan to sell 50 kilograms of cocaine; he traveled from Miami to New York to help with the transaction; and ... expected a large payment for his services."); *United States v. Sanchez*, 925, F.Supp. 1004 (S.D.N.Y. 1996)(Scheindlin J.)

(defendant received a minor role reduction although he arranged for a purchase of 212 kilograms of cocaine on behalf of another and was to receive $6,000 for his role). Karaqi's culpability is even less than others who have received a "minimal role" reduction. *See United States v. Delgado,* 994 F.Supp. 143 144 (E.D.N.Y.1998) (granting "minimal" role adjustment to courier who smuggled 700 grams of heroin into the United States from Colombia).

Second, Al is entitled to the 2 point familial motivational relationship reduction pursuant to U.S.S.G. § 2D1.1(b)(15), since Al did not purchase any marijuana for resale to others, did not make any money from any of the marijuana transactions, engaged in the instant offense solely because of familial relations with his brothers and Thaqi, and had minimal knowledge of the scope of the illegal activities of his coconspirators.

Probation contends in the PSR Addendum that the 2 point reduction for familial motivation is inapplicable because (1) Probation believes Al is not entitled to the "minimal role" adjustment, and (2) Probation states there is "no evidence that he was 'motivated by an intimate or familial relationship or by threats or fear to commit the offense, and was otherwise unlikely to commit such an offense.'" *PSR Addendum* at 2.

In response, we begin by noting simply that the government itself agrees that Al engaged in the instant offense solely because of familial relations and that the reduction applies. However, looking beyond the government's own representations, the facts speak for themselves. Karaqi has never before had any contact with the criminal justice system. Then, solely by virtue of his relationship with Thaqi, stemming from his sister's romantic relationship with him, did Al engage in the instant offense conduct. The only logical conclusion is that his motivation for committing the instant offense was by virtue of his

6

familial relationship with his sister and her boyfriend, Thaqi. While that is not to say that he had knowledge of the conspiracy's breadth, it certainly answers the question as to his motivation to engage in the underlying offense conduct, since there is no dispute that Al did not have any proprietary interest in the marijuana, and did not earn any money from his limited involvement in the conspiracy.

After accounting for a 2 point reduction for his acceptance of responsibility, Al's adjusted offense level is 12, and after discounting the agreed upon, two point, global reduction, the offense level is 10. Finally, while not provided for in the plea agreement, Al is also eligible for the further 2 point reduction provided for in U.S.S.G. §2D1.1(b)(16). On July 8, 2013, Al met with the government and successfully engaged in a safety valve proffer session. As stated in the PSR Addendum at page 2, Al has now satisfied all of the criteria of U.S.S.G. §5C1.2 and is therefore entitled to receive a 2 point reduction pursuant to U.S.S.G. §2D1.1(b)(16). This yields an adjusted offense level of 8. Since Al has no prior criminal history, this advisory guideline range recommends a sentence between 0-6 months.

For the Court's ease of reference, we submit that the following is the appropriate final guideline calculation for Mr. Karaqi. This is the calculation provided for in Karaqi's plea agreement, with the addition of the 2 point reduction for Safety Valve pursuant to §2D1.1(b)(16):

| | |
|---|---|
| Base Offense Level (§2D1.1 (c)(10)): | 20 |
| Minimal Role (§3B1.2(a)): | -4 |
| Motivated by Familial Relationship (§2Dl.l (b) (15)) | -2 |
| Acceptance of Responsibility (§3E1.1(a)) | -2 |
| Safety Valve (§2D1.1(b)(16)) | -2 |
| Global Disposition (§5K2.0) | -2 |
| Adjusted Offense Level | 8 |

**V.    LEGAL STANDARD:**

As this Court is undoubtedly aware, the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), has reshaped the way a sentencing judge can impose a sentence. The sentencing court may consider the guideline range, as well as any basis to depart from that range. However, the Court is no longer required to impose a sentence within that range. In fact, the federal sentencing guidelines are but one factor among several in determining an appropriate sentence. *Kimbrough v. United States*, 128 S.Ct. 554, 574 (2007). The guidelines are only the "starting point and initial benchmark…" *Id., citing Gall v. United States*, 128 S.Ct. 586, 596 (2007). It is the sentencing judge who has the advantage of familiarity with the details of the case and can best evaluate the import of the § 3553(a) factors. *Id., Kimbrough*, 128 S.Ct. at 574, *citing Gall*, 128 S.Ct. at 597.

8

In determining a sentence that is "sufficient, but not greater than necessary," the first of those factors the judge must consider is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §3553 (a)(1). Without a doubt, the breadth of this factor alone extends far beyond the guidelines and implores the sentencing judge to consider the unique circumstances and characteristics of the defendant in each case. A consideration of those characteristics, along with the remaining seven factors,[4] may render sentences that do not fit within the guidelines, yet are fair and meet the goals of sentencing set forth in §3553 (a)(2). *See United States v. Ovid*, 09 CR 216, slip op. 3 (EDNY, Oct. 1, 2010).

Therefore, the Court may not simply presume that the Guidelines range is reasonable. *Gall*, at 597. Rather, the Court must make an individualized assessment based on the facts presented. From its unique vantage, the Court may conclude that, despite the guidelines, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to accomplish the goals of sentencing. . ." *Kimbrough*, 128 S.Ct. at 570, *citing* 18 U.S.C. § 3553(a). The "not greater than necessary" language of the federal sentencing statute incorporates the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law" and "provide just punishment for the offense." 18 U.S.C. § 3553(a). Indeed, as the Supreme Court suggested in *Gall*, a sentence of imprisonment may not promote respect for the law if it appears unduly harsh in light of the real conduct and circumstances of the particular case. *Gall*, 128 S.Ct. at 599; *see also Rita v. United*

---

[4] The seven other factors are (1) the nature and circumstances of the offense; (2) the history and characteristics of the offender;(3) the need for the sentence imposed to reflect the goals of sentencing set forth in § 3553(a)(2); (4) the kinds of sentences available; (5) the Commission's policy statements; (6) the need to avoid unwarranted sentence disparities among similar defendants who commit similar crimes; and (7) the need to provide restitution to victims. *See* 18 U.S.C. §3553 (a).

9

*States*, 127 S.Ct. 2456, 2465 (2007) (observing that district court may consider arguments that "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

## VI.  AL'S HISTORY AND CHARACTERISTICS:

As detailed above, a sentencing court must consider the defendant's history and characteristics when determining the appropriate sentence. *See* 18 U.S.C. § 3553(a). Importantly, and as the PSR accurately reflects, Al has thus far lived a law abiding life as a hard working citizen who has had no prior contact with the criminal justice system.

In 1989, after Al completed the 10th grade, he entered the workforce to provide support for his family. PSR ¶ 91, 103. Al began his employment working at his father's pizzeria in the Bronx. *Id*. Since that time, Al has consistently performed manual labor.

 In 1993, after 4 years of working at his father's pizzeria, Al worked as a top mechanic at a construction company where he learned the skills of metal and marble restoration. PSR ¶ 106. He continued to work as a marble and metal restoration mechanic until 2008 when he opened his own restoration business. PSR ¶ 104.

As a small business owner and sole supporter of his family, Al works as much as possible to support his wife and two children. Unfortunately, the hours are very difficult. Frequently, such restoration must take place during non-business hours, which requires that he work from 11:00 pm to 6:00 am. Obviously, these work hours make it difficult for him to enjoy time with his family, as they maintain very different schedules. Despite his work hours, Al's wife of 20 years, Antoneta Duhanaj, reported to Probation that Al's family is very close and they still manage to spend a lot of time together. *Id*. As the PSR reports, Al explained that he enjoys a strong relationship with his wife, stating that "[w]e're best friends," and "she understands me." PSR ¶ 94. In addition to his wife, Al

10

also supports his two children, A????? K????? (age 19) and S????? K????? (age 17), with whom he enjoys a loving relationship. *Id.*

Unfortunately, as the PSR indicates, Al's business has declined in large part because he has been working on one major project for only one client and that client has failed to pay his company for a significant amount of work (for the two months prior to the presentencing interview date). PSR ¶ 104. The decline in business has resulted in the foreclosure of Al's family home. As the PSR reports, "due to the family's recent financial struggles, including foreclosure proceedings on the home at the address of record (approximately February 2013), the decline in the wife's and the defendant's businesses (see Employment section of this report), his wife and children relocated to Lapeer," Michigan. PSR ¶ 94. As devastating as this was for Al, he has since committed himself to working day and night in hopes of repurchasing his home so that his family can move back in. As of the date of this memorandum, his family has returned to New York where they currently live with Mr. Karaqi's brothers while Mr. Karaqi struggles to reclaim his foreclosed home.

Notwithstanding the instant offense, and as evidences by his hard work and dedication to his family, Al is an otherwise kind, caring, and family-oriented individual.

Al's wife of 20 years, Antoneta Duhanaj, explained to Probation that he is very hardworking and "'an amazing man and husband.'" PSR ¶ 95, 96. Furthermore, she reported to Probation that Al is a "great father, who loves his kids and family deeply." *Id* at 96.

Aside from what Mrs. Karaqi reported to Probation, she has written a letter to the Court that more fully articulates how she feels about her husband. Mrs. Karaqi writes the following:

> We've been together for 20 years and he's given me the family and life I get to enjoy today. We have had our fare share of ups and downs, but my husband is a very supportive man. He's thoughtful and loyal. He is an amazing father of two beautiful kids, A       and S       . He loves his children and gives his best effort nd beyond to give them the life that they deserve. I can call him not only my husband, but also my best friend. I love him and the family he's provided me.
>
> Al isn't just a good husband; he's a good man. He looks out for our safety, et is generous with those who need help. When my father passed away last year, he not only took care of me emotionally, he helped my family financially. He was always checking up on them to see if there was anything he could do for them.

*Ex*. B at 1.

Al is also well liked by his friends. For example, Krystal Morales, a close friend of Al's who has known him for the past 7 years, describes how Al is "an exquisite example of what it is to be the head of a household." *Ex*. B at 2.

> I have known Alfred Karaqi seven years. Through out that period I have worked for him as a secretary on and off whenever he had work available and if there was not, he always aided me in finding work else where. When I met him I was a young single mother of a four year old little girl, coming out of an abusive relationship. After a short time of knowing me he helped me relocate to another apartment in a better neighborhood where it was safe for my daughter and I. Mr. Karaqi encouraged me to go back to college, provided financial aid for my books and tuition through employment with his company, and has written numerous recommendation letters on my behalf that has led to great employment opportunities. It is because of him I have a descent job and am able to provide a stable home and good education for my child.

*Ex*. B at 2-3.

Similarly, Mr. Wayne Erickson, who has known Al since 2005, describes him as "man of strength, kindness, compassion, humor, devotion and loyalty." *Ex*. B at 4-5.

12

Though he states that "[t]he trust [he] ha[s] in Al is not easily transcribed on paper," he writes to the Court:

> Al and I met in 2005 when his family moved next door to mine, both families immediately became friends. I cannot adequately express how grateful I am to have met Al and for our continuous friendship. On so many occasions and levels, Al has supported me, guided me and yes he has even pointed me out to be a complete idiot. Going back 6 – 7 years I was not in a good place. I had a mental breakdown that I refuse to accept. This breakdown came to close to me losing my wife and kids. I would fight daily with my wife to a point where I almost walked out on them until Al stepped in spent the time to calmly talk with me/show me that I was wrong and thanks to him I was able to seek help and thank god my marriage remains solid today. Al has helped me through the loss of my employment, loss of loved ones and of course happy times we've shared with our families' wives, kids, parents etc.

*Ex.* B at 4-5.

Finally, 18 U.S.C. §3553(a)(6) requires that when imposing the particular sentence the Court shall consider the need to avoid unwarranted sentence disparities among similar defendants who commit similar crimes. In this regard, we simply refer the Court to the fact that Al received no money for his limited participation in the offense, as compared to his brother, Lee Karaqi ("Lee"), who, according to the PSR, received $2,000 for his role in the offense. PSR ¶ 54. Ultimately, Your Honor sentenced Lee Karaqi, whose guideline range was 8-14 months, to 3 years probation with 6 months of home detention.

According to the Presentencing Report, Lee was involved in the conspiracy to a much greater extent. Lee "facilitated the sale of approximately 21 kilograms of marijuana to Gjavit Thaqi on two occasions, and introduced Thaqi to a significant marijuana trafficker, with the assumption that they could conduct future drug transactions." PSR ¶ 54. Indeed, on several occasions Lee was observed making small pickups of marijuana

13

from conspirators. *Id.* According to the PSR, Lee is "accountable for the distribution of between 40-60 kilograms of marijuana (including the two sales to Thaqi)." *Id.*

We respectfully submit that Al's participation was substantially less than that of his brother, Lee, and therefore request that when fashioning a sentence for Al Karaqi, that Your Honor not impose a custodial sentence, nor any home detention. In other words, we respectfully submit that a sentence of probation, with no home detention, is appropriate since it is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Notably, notwithstanding our challenges to the Probation Department's calculation of Al's offense conduct under the sentencing guidelines, Probation agrees that "a non-custodial sentence for this first time offender is sufficient to meet the need for punishment and deterrence." *See Revised U.S. Probation Department Sentence Recommendation at 2.*

There is no doubt that the instant offense was out of character for Mr. Karaqi. Despite his regrettable decision to engage in the instant criminal conduct, Mr. Karaqi will continue to live a law abiding life and assures Your Honor that he will never again have contact with the criminal justice system.

## VII. <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request this Court impose a sentence of probation.

Dated:   New York, New York
         August 12, 2013

_____
Eric Franz (EF 3268)

14